IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SHECK MULBAH,<br><br>Plaintiff,<br><br>vs.<br><br>CODY JANSEN,<br><br>Defendant. | Civ.\_\_\_20-4127\_\_\_<br><br>**COMPLAINT** |

COMES NOW the Plaintiff, Sheck Mulbah, for his Complaint against the Defendant, Cody Jansen, and hereby states and alleges as follows:

## PARTIES

1. Plaintiff Sheck Mulbah (Plaintiff) is a resident of New York City, New York, and a citizen of the State of New York.

2. To the best of Plaintiff's knowledge, Defendant Cody Jansen (Defendant) is a South Dakota Highway Patrol Trooper who is resident and citizen of the State of South Dakota. Defendant is named in his individual capacity.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the case arises under the Constitution and laws of the United States, as applied to state and local authorities through 42 U.S.C. § 1983.

4. Venue in the United States District Court for the District of South Dakota is proper pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendant resides in this judicial

district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district..

5. Plaintiff served notice of his causes of action on the applicable public entities pursuant to SDCL §§ 3-21-2 and 3-21-3.

## FACTS

6. At approximately 10:40 p.m. on June 19, 2020, Plaintiff drove a white Dodge Caravan rental on I-90 near Sioux Falls, South Dakota, when Defendant pulled him over.

7. From the commencement of the stop to the end, Defendant acted under color of state law in his capacity as a South Dakota Highway Patrol Trooper.

8. Plaintiff and the two passengers in the rental car are friends who graduated from Stanford University in spring 2020. All three are Black men in their early twenties.

9. Defendant is white.

10. After initiating the stop (0:00),[1] Defendant approached the passenger side of the vehicle and stated that he pulled the vehicle over for a speeding violation.

11. Plaintiff did not exceed the speed limit during the time in question.

12. Defendant asked Plaintiff to accompany him back to the patrol vehicle so he could write a warning.

13. As they approached the patrol vehicle, Defendant's canine in a backseat cage began aggressively barking, snapping, and growling (1:30).

---

[1] This time-marker is used to designate the time when the stop began (0:00 meaning the stop's inception), various important moments during the stop, and when the stop ended. The times designated are approximate.

2

14. Defendant directed Plaintiff to sit in the passenger seat, which was moved far forward toward the dash and was confined to a small space because Defendant's laptop was positioned over the seat where a person would normally sit.

15. Because the front seat was an unmanageably small space that Plaintiff could not fit into, it took multiple efforts to close the car door and situate himself, a process that took approximately 15 seconds (1:40-1:55).

16. Defendant made no effort to make the space allotted to Plaintiff less cramped.

17. The canine exhibited hostile behavior toward Plaintiff, barking right behind Plaintiff's head, especially loudly when he spoke, and Defendant did not command the canine to calm down until approximately 60 seconds of barking elapsed (1:30-2:30).

18. Approximately 10 seconds after first commanding the canine to be quiet (2:38-2:40), Defendant had to command the dog a second time to calm down because it was acting hostile again.

19. Defendant asked Plaintiff various travel itinerary-related questions. Plaintiff indicated he and his friends just graduated college at Stanford and were going on a road trip from California to drop off one friend at a new job in Chicago, after which Plaintiff would fly to his hometown of New York City.

20. While Defendant asked travel plan questions, he opened his laptop, further encroaching on Plaintiff's personal space and requiring him to contort his body by bending his left arm in an uncomfortable manner in order to remain seated and comply with Defendant's directions.

21. Defendant completely disregarded Plaintiff's obvious physical discomfort.

22. Defendant asked Plaintiff why he chose to drive to Chicago instead of taking a flight, and Plaintiff explained that he and his friends are first-generation low income students, so this road trip was their opportunity to have a fun trip because they cannot afford to travel as freely as some of their Stanford classmates. Plaintiff indicated they stopped at Mount Rushmore.

23. The canine repeatedly and aggressively barked at Plaintiff five more times while he was in the patrol car (3:20-3:22; 3:34-3:36; 7:41-7:47; 10:23-10:40; 11:04-11:06).

24. Each time the dog barked, Plaintiff was visibly startled.

25. Defendant proceeded to ask Plaintiff various personal questions—whether he was starting a new job after college and whether he grew up in New York City.

26. During Defendant's questioning, he slowly typed and scrolled on his laptop, presumably for the purpose of completing the warning citation.

27. Approximately 10 minutes and 15 seconds into the stop, Defendant asked a series of questions unrelated to the purpose of the speeding warning, rather they were related to drug trafficking and crime in general.

28. Defendant asked whether Plaintiff or his friends were carrying any weapons.

29. Defendant asked whether they had guns.

30. Defendant asked whether they had marijuana.

31. Defendant asked whether they had methamphetamine.

32. Defendant asked whether they had cocaine.

33. Defendant asked whether they had paraphernalia.

34. Defendant asked whether they had waxes or oils.

35. Plaintiff did not know what Defendant meant by waxes or oils, he asked whether Defendant was referring to candles, and Defendant clarified he was asking about THC wax or oils.

36. Plaintiff answered no to all of the questions about drugs and crime in general.

37. While asking these questions, Defendant was printing the warning citation, and before handing it to Plaintiff, Defendant asked whether Plaintiff would allow him to search the vehicle to make sure they did not possess any of the illegal items that were the focus of Defendant's last round of questions.

38. Plaintiff said yes because he did not feel as though he had the freedom to say no to the search.

39. Then Defendant handed Plaintiff the printed warning.

40. Defendant's questions regarding drug trafficking and crime in general lasted approximately 35 seconds (10:15-10:50).

41. Throughout most of the last round of questions, the canine aggressively barked right behind Plaintiff (10:23-10:40).

42. Defendant indicated he would go ask the other passengers of the rental whether he could search, and Defendant suggested Plaintiff exit the vehicle so he did not have to sit next to the canine. The canine barked as Defendant made this suggestion.

43. Plaintiff was seated in the patrol vehicle for 9 minutes and 18 seconds (1:55-11:13).

44. Plaintiff experienced extreme emotional harm while in the patrol vehicle, including fear, humiliation, and mental anguish, because he was forced into an unreasonably

small seat while a hostile dog barked and snarled behind his head and he was subjected to questioning about drug trafficking and general crime when he was pulled over for allegedly speeding.

45. Adding to Plaintiff's extreme emotional harm was his awareness that, for many Black people in situations just like this, interactions with law enforcement that start out cordial can quickly escalate into violent experiences where Black people end up killed at the hands of law enforcement.

46. Further adding to Plaintiff's extreme emotional harm was his awareness of Defendant's use of a police canine for intimidation, in light of America's history of law enforcement, dating back to slave patrols and through civil rights protests, using dogs to violently control Black people.

47. While in the patrol vehicle, Plaintiff did not exhibit signs of excessive nervousness, despite the nature of this traffic stop—forcing Plaintiff into a confined space while a canine aggressively barked behind his head.

48. While in the patrol vehicle, Plaintiff did not provide any suspicious or inconsistent answers to Defendant's questions.

49. When Defendant reached the passenger side of the rental car, he asked the two passengers questions related to drug trafficking and crime in general, and the questioning lasted approximately 8 seconds (11:35-11:43).

50. Defendant asked whether they had any alcohol.

51. Defendant asked whether they had any marijuana.

52. Defendant asked whether they had any methamphetamine.

6

53. Defendant asked whether they had any cocaine.

54. The passengers answered no to each question about drugs and crime in general.

55. Defendant then asked the passengers whether he could search the vehicle, they did not agree right away, so Defendant asked again, and they said yes.

56. Defendant told the three young Black men that they had "nothing to worry about if [they] don't have anything." (12:13-12:15).

57. Defendant asked the three young men to open their bags for him while he stood at the back of the rental car with his flashlight.

58. While opening their bags, Defendant indicated that California is a source state for marijuana and he wanted to make sure the bags in the car were "not full of weed or something." (12:45-12:53).

59. Before the search concluded, Defendant asked whether Plaintiff and his friends had seen "any big riots" in California. (17:07-17:09).

60. Understanding Defendant to be referring to the racial justice protests occurring after the killing of George Floyd, Plaintiff responded that there were peaceful protests—not riots.

61. Defendant's search of the vehicle lasted approximately 7 minutes and 13 seconds (12:12-19:25).

62. Defendant discovered nothing illegal during the stop and search of the rental car.

63. When Defendant returned to the patrol car, he said, "good boy," and "good boy, buddy," to the canine (19:40-19:44).

64. Starting from when Plaintiff parked his vehicle, the entire traffic stop lasted approximately 19 minutes and 42 seconds.

## COUNT I
### Unlawful seizure
### in violation of 42 U.S.C. § 1983 and the
### Fourth and Fourteenth Amendments of the United States Constitution

65. Plaintiff re-alleges all previous paragraphs of this Complaint and incorporates them as if fully set forth here.

66. The law required Defendant to have reasonable suspicion or probable cause in order to conduct a traffic stop of Plaintiff.

67. Because Plaintiff did not violate traffic laws or any other laws during the time period in issue, Defendant lacked a lawful basis for stopping Plaintiff.

68. Accordingly, Defendant's stop of Plaintiff violated clearly established rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

69. Defendant's unlawful stop directly and proximately damaged Plaintiff because it violated his clearly established rights and subjected him to emotional harm, including fear, humiliation, and mental anguish.

70. Defendant should be held liable in his individual capacity for unlawfully stopping Plaintiff.

## COUNT TWO
### Unlawful seizure (prolongation)
### in violation of 42 U.S.C. § 1983 and the
### Fourth and Fourteenth Amendments of the United States Constitution

71. Plaintiff re-alleges all previous paragraphs of this Complaint and incorporates them as if fully set forth here.

72. Independent from the commencement of an unlawful stop, Defendant unlawfully prolonged the stop in violation of the holding of the Supreme Court of the United States in Rodriguez v. United States, 575 U.S. 348 (2015).

73. In questioning Plaintiff about various matters unrelated to his alleged speeding—specifically, about drug trafficking and crime in general, about why he was driving instead of flying, about his hometown—Defendant added time to the stop without reasonable suspicion for doing so.

74. Also without reasonable suspicion, Defendant further added time to the stop by questioning the two passengers of the rental vehicle on subjects unrelated to alleged speeding—specifically, whether they were involved in drug trafficking or criminal activity in general.

75. Defendant also added time to the stop by requiring Plaintiff to situate himself in a passenger seat that was unmanageably small and by questioning Plaintiff while a hostile canine barked and growled behind Plaintiff's head.

76. As a further violation of Rodriguez, Defendant failed to act reasonably diligent in completing the mission of the stop for an alleged speeding infraction, specifically by requiring Plaintiff to situate himself in a passenger seat that was unmanageably small and by

questioning Plaintiff about drug trafficking while a hostile canine barked and growled behind Plaintiff's head.

77. Accordingly, Defendant's prolongation of the stop of Plaintiff violated clearly established rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

78. Defendant's unlawful prolongation of the stop directly and proximately damaged Plaintiff because it violated his clearly established rights and subjected him to emotional harm, including fear, humiliation, and mental anguish.

79. Defendant should be held liable in his individual capacity for unlawfully prolonging the stop of Plaintiff.

### COUNT THREE
### Unlawful search
### in violation of 42 U.S.C. § 1983 and the
### Fourth and Fourteenth Amendments of the United States Constitution

80. Plaintiff re-alleges all previous paragraphs of this Complaint and incorporates them as if fully set forth here.

81. Under the totality of the circumstances, the objective factors of the situation when Defendant asked Plaintiff for consent to search the vehicle demonstrate that Plaintiff's choice to allow the search was not voluntary, rather it was a product of duress or coercion.

82. These objective factors include but are not limited to: confining Plaintiff to a tiny a seat he could barely fit into, allowing the police canine to viciously bark and snarl being Plaintiff's head, interrogating Plaintiff on whether he was trafficking drugs or committing various other crimes, extending a routine traffic stop beyond the time necessary

to complete the permissible investigation, and not handing Plaintiff the citation before asking to search.

83. Further, Defendant asked to search as a continuation of his sequence of unlawful conduct, beginning with the unlawful stop and the unlawful prolongation of the stop, all of which undermines the voluntariness of Plaintiff allowing the search.

84. Additionally, because Defendant had to ask the passengers of the rental car twice for permission to search, as they refused at first, and because those actions were a further continuation of Defendant's series of unlawful acts, the passengers letting the search occur does not render the search lawful.

85. Accordingly, Defendant's search of the rental car Plaintiff drove violated clearly established rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

86. Defendant's unlawful search directly and proximately damaged Plaintiff because it violated his clearly established rights and subjected him to emotional harm, including fear, humiliation, and mental anguish.

87. Defendant should be held liable in his individual capacity for unlawfully searching the rental car Plaintiff drove.

**WHEREFORE,** Plaintiff respectfully prays for damages against Defendant as follows:

(1) For Plaintiff's compensatory, general, and special damages in an amount that the Court deems just and proper under the circumstances;

(2) For punitive damages based on Defendant's reckless or wanton conduct, malicious conduct, and oppressive conduct, in an amount that the Court deems just and proper under the circumstances;

(3) In the alternative to (1) and (2), for nominal damages;

(4) For Plaintiff's costs and disbursements herein;

(5) For prejudgment and post-judgment interest;

(6) For reasonable attorneys' and experts' fees pursuant to 42 U.S.C. § 1988; and

(7) For such other and further relief as the Court determines to be just and proper.

Dated this 26th day of August, 2020.

**HEIDEPRIEM, PURTELL SIEGEL & HINRICHS, LLP**

BY  /s/ Pete Heidepriem
Scott N. Heidepriem (scott@hpslawfirm.com)
John R. Hinrichs (john@hpslawfirm.com)
Matthew A. Tysdal (matthew@hpslawfirm.com)
Pete Heidepriem (pete@hpslawfirm.com)
101 West 69th Street, Suite 105
Sioux Falls, SD 57108
(605) 679-4470

**RANDY SEILER LAW OFFICE, LLC**
Randy Seiler (randyseilerlaw@gmail.com)
2411 Whispering Shores Drive
Fort Pierre, SD 57532
(605) 222-8877

*Attorneys for the Plaintiff*

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Sheck Mulbah

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott Heidepriem, John Hinrichs, Matthew Tysdal, Pete Heidepriem, Randy Seiler
101 West 69th Street Suite 105 Sioux Falls, SD 57108

## DEFENDANTS
Cody Jansen

County of Residence of First Listed Defendant   Clay
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
Unconstitutional seizures and search by law enforcement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 08/26/2020
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____